UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Criminal No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. KELLY LOUISE JAEDIKE,
   a/k/a Kelly Louise Ahern,
   a/k/a Kelly Louise Bailey, and
2. DAVID DALE AHERN,

        Defendants.

INDICTMENT *CR 15-248 DWF/JJK*

18 U.S.C. § 2
18 U.S.C. § 371
26 U.S.C. § 7201
26 U.S.C. § 7202

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTORY ALLEGATIONS

### Summary

At times relevant to this Indictment:

1. Defendant Kelly Louise Jaedike ("Kelly Jaedike"), with the assistance of Defendant David Dale Ahern ("David Ahern"), and others:

    a. failed to timely pay over to the Internal Revenue Service ("IRS") all employment tax obligations incurred by a restaurant Kelly Jaedike and David Ahern operated;

    b. failed to timely report to the IRS all employment tax obligations incurred by the same restaurant and/or withheld from the restaurant employees; and

    c. concealed Kelly Jaedike's income and assets;

SCANNED
SEP 1 0 2015
U.S. DISTRICT COURT ST. PAUL

to prevent the IRS from identifying and collecting the U.S. employment taxes that were owed by the restaurant and, in some instances, were personally assessed to Kelly Jaedike.

2. Kelly Jaedike, David Ahern, and B.J. were residents of the State of Minnesota.

3. Kelly Jaedike is married to B.J.

4. David Ahern is Kelly Jaedike's brother.

**Kelly Jaedike Operated The Restaurant Under Slainte**

5. In 2002, Kelly Jaedike formed Slainte, LLC ("Slainte") for the purpose of operating a Melting Pot restaurant in Minneapolis, Minnesota ("the Restaurant"), with her brother, David Ahern.

6. Employers generally are required to withhold and pay employment taxes – comprised of income taxes, Medicare and Social Security taxes – for each employee. The employer pays over employment taxes to the IRS in two parts on a schedule set by the IRS. One part of employment taxes is withheld from the employee's wages by the employer and is generally described as the "employee's share." The other part of employment taxes is paid from the employer's own funds and is generally described as the "employer's share." Together, the employee's share and the employer's share constitute the employment taxes owed to the IRS for each employee.

7. Kelly Jaedike operated the Restaurant through an entity named Slainte and was obligated to withhold and pay over all employment taxes for the Restaurant's employees. Despite this obligation, she failed to timely pay over the full amount of

employment taxes owed by the Restaurant, even though Kelly Jaedike withheld income tax, Medicare tax, and Social Security tax from her employees' wages.

8. As a result of Kelly Jaedike's failure to timely pay over all the employment taxes withheld from employees' pay as required by law, the IRS began seeking to recover those withheld amounts from Kelly Jaedike. The IRS's efforts were unsuccessful, and, ultimately, the IRS assessed Kelly Jaedike more than $181,000 in back employment taxes and penalties in August 2006.

### Kelly Jaedike Continued Operating The Restaurant Under New Grange

9. Kelly Jaedike – with the assistance of David Ahern and/or others acting with her knowledge – took steps to conceal her continued operation of and income from the Restaurant and thereby prevent the IRS from identifying and seizing her income or assets to pay off her employment tax debt.

10. Though Kelly Jaedike continued to operate the Restaurant as she always had, in or about late 2006 or early 2007, Kelly Jaedike began doing so using a nominee entity (New Grange LLC ("New Grange")) and stopped using the entity named Slainte. Unlike Slainte, which was formed in a way that publicly identified Kelly Jaedike as its sole owner, New Grange showed no public connection to Kelly Jaedike. In short, New Grange's formation documents contained no reference to Kelly Jaedike, even though she occupied the very same role at the Restaurant as she had under Slainte.

11. To further conceal Kelly Jaedike's continued operation of the Restaurant and her resulting income, Kelly Jaedike, David Ahern, and/or others acting with their knowledge arranged:

    a.    for Kelly Jaedike's wages to be paid in the form of New Grange payroll checks for B.J., at the same time that B.J. was working full time at a national electronics retailer;

    b.    for IRS Forms W-2 to fraudulently identify Kelly Jaedike's wages as B.J.'s;

    c.    for Kelly Jaedike's wages – those paid in payroll checks for B.J. – to be deposited in a bank account held solely in B.J.'s name;

    d.    for the preparation of false U.S. individual income tax returns; and

    e.    for the payment of personal and other non-Restaurant expenses from the Restaurant's coffers.

12. In addition to taking steps to conceal Kelly Jaedike's income and assets, Kelly Jaedike and David Ahern failed to timely file U.S. employment tax returns that identified the employment tax obligations that the Restaurant continued to incur while operating under the auspices of New Grange.

13. While operating the Restaurant and failing to timely report and pay over the full amount of employment taxes owed on behalf of Restaurant employees, Kelly Jaedike and others acting with her knowledge used funds generated by the Restaurant – more than $410,000 – to bankroll her efforts to open a bar adjacent to the Minnesota Twins baseball stadium (Ahern's Irish Pub).

14. In addition, Kelly Jaedike, David Ahern, and others used Restaurant funds to pay more than $550,000 in personal mortgage loan payments, personal vehicle loan

payments, and other personal expenditures to benefit themselves and their family members.

15. This substantial spending on expenses other than those of the Restaurant left the Restaurant in a precarious financial position, such that there were insufficient funds to pay the debts of the Restaurant, including both the employment tax obligations personally assessed to Kelly Jaedike under Slainte and the ongoing employment tax obligations incurred by the Restaurant as it continued to operate under New Grange.

16. For tax years 2007, 2009, and 2010, Kelly Jaedike filed U.S. individual income tax returns (either individually or jointly with B.J.) falsely attesting that she had no income.

17. In the same tax years, B.J. filed U.S. individual income tax returns (either individually or jointly with Kelly Jaedike) falsely attesting that he had earned wages from the Restaurant.

### COUNT 1
### (18 U.S.C. § 371: Conspiracy to Defraud the United States)

18. Paragraphs 1-17 are hereby realleged and incorporated by reference.

19. Beginning in or about 2006 and continuing through in or about 2011, in the State and District of Minnesota, the defendants,

**KELLY LOUISE JAEDIKE,**
a/k/a Kelly Louise Ahern,
a/k/a Kelly Louise Bailey, **and**
**DAVID DALE AHERN,**

and others known and unknown to the grand jury, did unlawfully and knowingly conspire, combine, confederate, and agree with other persons both known and unknown

to the grand jury, to defraud the United States by deceitful and dishonest means by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service, an agency of the United States, and the Treasury Department of the United States in the ascertainment, computation, assessment, and collection of revenue, that is, U.S. employment taxes.

## OBJECT OF THE CONSPIRACY

20. The object of the conspiracy was:

   a. to thwart, impede and obstruct the IRS in assessment and collection of U.S. employment taxes for the Restaurant's employees, to disguise and conceal from the IRS the source and location of income and assets controlled by Kelly Jaedike, and

   b. to divert the Restaurant's available assets to benefit Kelly Jaedike, David Ahern, and their family members personally and in other business ventures,

all to defeat the assessment, collection and payment of the employment tax debts assessed to Kelly Jaedike personally and incurred on an ongoing basis as the Restaurant continued to operate.

## MANNER AND MEANS

21. Defendants Kelly Jaedike, David Ahern, and/or another or others acting at their direction, carried out this conspiracy through the following manner and means, among others:

a. failing to pay and evading payment of more than $181,000 in back employment taxes and penalties, assessed in 2006, against Kelly Jaedike, by transferring the Restaurant to New Grange and then concealing her ownership and control of New Grange;

b. using the nominee entity, New Grange, to conceal Kelly Jaedike's continued operation of and income from the Restaurant;

c. filing IRS Forms 1120S that falsely concealed Kelly Jaedike's true ownership and control of New Grange;

d. falsely identifying Kelly Jaedike's wages as those of B.J.;

e. failing to timely report U.S. employment taxes incurred by the continued operation of the Restaurant under New Grange;

f. failing to pay and evading the payment of more than $680,000 in U.S. employment taxes owed by New Grange on behalf of the Restaurant employees for multiple tax quarters in tax years 2009 through 2011;

g. misappropriating Restaurant funds for the benefit of Kelly Jaedike, David Ahern, and others, all to the detriment of the United States;

h. misappropriating Restaurant funds to pay for expenses related to opening Ahern's Irish Pub, all to the detriment of the United States; and

i. concealing funds – both funds generated by the Restaurant and funds paid for the benefit of Kelly Jaedike, David Ahern, and others – by filing false tax documents and failing to file required tax documents.

22. Through the above-described means, from 2006 through 2011, Kelly Jaedike, David Ahern, and/or others acting with their knowledge attempted to and did evade payment of approximately $860,000 employment tax obligations incurred by the Restaurant, under Slainte and New Grange.

## OVERT ACTS

23. In furtherance of the conspiracy and to achieve the objects thereof, Kelly Jaedike, David Ahern, and/or others acting at their direction committed the following overt acts, among others, in the District of Minnesota:

    a. on or about October 26, 2006, formed the nominee entity New Grange with no reference to Kelly Jaedike;

    b. on or about November 1, 2006, secured M.M. to act as the nominee owner of New Grange;

    c. on or about February 2, 2007, opened six bank accounts for the nominee entity, New Grange, and in so doing, identified B.J. as New Grange's "president/CFO," David Ahern as New Grange's "vice president/COO" and, on all but one of the accounts, Kelly Jaedike as New Grange's "manager;"

    d. on or about April 14, 2008, caused the filing of a false IRS Form 1040 (married filing separately) for tax year 2007, that fraudulently identified Kelly Jaedike's income from the Restaurant as $0;

    e. on or about October 14, 2008, caused the filing of a false IRS Form 1040 (married filing separately) for tax year 2007 that fraudulently identified

B.J.'s income from the Restaurant as $71,122, when the income was actually that of Kelly Jaedike and B.J. was employed full time at a national electronics retailer;

 f. on or about November 24, 2008, caused the filing of an IRS Form 1120S for tax year 2007, which identified New Grange's 100 percent shareholder as M.M. and made no reference to Kelly Jaedike;

 g. on or about November 14, 2009, advised the Restaurant's bookkeeper and David Ahern by email that Kelly Jaedike's house and car payments needed to be made on time and before payment of other Restaurant expenses to avoid repossession of Kelly Jaedike's Cadillac Escalade and negative consequences to B.J.'s credit;

 h. on or about November 24, 2009, advised the Restaurant's bookkeeper and David Ahern by email of the personal credit card payments, residential mortgage payments, and residential property taxes that needed to be paid from Restaurant funds on behalf of Kelly Jaedike, B.J., and David Ahern;

 i. during the years 2007 through 2011, issued and caused the issuance of numerous biweekly payroll checks to B.J. – for Kelly Jaedike's wages and her work at the Restaurant – all while B.J. was employed full time at a national electronics retailer;

 j. during the years 2007 through 2011, deposited B.J.'s Restaurant payroll checks into a bank account opened on or about October 15, 2007, and held solely in the name of B.J.;

k. on or about March 1, 2010, advised the Restaurant's bookkeeper and another person of $25,000 in payments to be made from Restaurant funds for architectural work at Ahern's Irish Pub;

l. on or about May 17, 2010 – after the Restaurant's bookkeeper again reminded Kelly Jaedike, David Ahern and another of the hundreds of thousands of dollars in employment taxes that the Restaurant owed to the United States and the State of Minnesota – advised that she (Kelly Jaedike) was working to "complete financing on the Pub to relieve the pressure from" the Restaurant;

m. on or about October 5, 2010, caused the opening of six bank accounts for the nominee entity, New Grange, and identified David Ahern and Kelly Jaedike as those authorized to transact business on the accounts;

n. on or about June 23, 2011, appeared before a U.S. Bankruptcy Trustee in connection with the New Grange bankruptcy and asserted that Kelly Jaedike worked "pro bono" for the Restaurant after initially stating her income was "funneled through her husband;"

o. on or about August 31, 2012, caused the filing of a false IRS Form 1040 (married filing jointly) for tax year 2009, which identified Kelly Jaedike's occupation as "homemaker;"

p. on or about September 13, 2012, caused the filing of a false IRS Form 1040 (married filing jointly) for tax year 2010, that fraudulently identified B.J.'s income from the Restaurant as $101,068, when the income was actually that of Kelly Jaedike and B.J. was employed full time at a national electronics retailer;

  q. on or about September 4, 2012, caused the filing of a false IRS Form 1040 (married filing jointly) for tax year 2011, that fraudulently identified B.J.'s income from the Restaurant as $33,698, when the income was actually that of Kelly Jaedike and B.J. was employed full time at a national electronics retailer.

24. All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (26 U.S.C. § 7201: Attempt to Evade or Defeat Tax)

25. Paragraphs 1-23 are hereby realleged and incorporated by reference.

26. During the calendar years identified below, defendant Kelly Jaedike, as the actual operator of the Restaurant under Slainte, and, in August 2006, having been personally assessed back employment taxes for the Restaurant's employees as a result of her nonpayment thereof, was obligated to pay the employment tax for the Restaurant's employees – both the employer's share and the employees' share of that tax – and owed the United States of America approximately $181,000 for the assessed and unpaid amount.

27. Well aware of the facts set forth in the previous paragraph, the defendant,

**KELLY LOUISE JAEDIKE,**
a/k/a Kelly Louise Ahern,
a/k/a Kelly Louise Bailey,

did willfully evade and attempt to evade the payment of U.S. employment taxes by committing affirmative acts of evasion including, among others, (1) transferring the Restaurant to a nominee entity not held in Kelly Jaedike's name (New Grange); (2) funneling her wages from the Restaurant through her husband, B.J.; (3) filing a false U.S.

individual income tax return for tax year 2007 (married filing separately) that reported $0 wages for Kelly Jaedike; (4) failing to file a U.S. individual income tax return for tax year 2008; and (5) filing false U.S. individual income tax returns (married filing jointly) for tax years 2009, 2010, and 2011 that concealed Kelly Jaedike's Restaurant wages. All in violation of Title 26, United States Code, Section 7201.

## COUNTS 3-10
### (26 U.S.C. § 7202: Willful Failure to Collect and Pay Over Employment Taxes)

28.   Paragraphs 1-23 are hereby realleged and incorporated by reference.

29.   For the tax period identified below, in the State and District of Minnesota, the defendants,

**KELLY LOUISE JAEDIKE,**
a/k/a Kelly Louise Ahern,
a/k/a Kelly Louise Bailey, **and**
**DAVID DALE AHERN,**

aiding and abetting each other and aided and abetted by others; having a duty to collect, account truthfully for and pay over an employment tax; and knowing of this duty, willfully failed to pay over an employment tax, as identified below:

| COUNT | TAX PERIOD ENDING | EMPLOYEE'S SHARE OF TAXES (UNPAID) |
|---|---|---|
| 3 | September 2009 | $64,552.49 |
| 4 | December 2009 | $43,071.42 |
| 5 | March 2010 | $51,926.75 |
| 6 | June 2010 | $48,654.68 |
| 7 | September 2010 | $51,595.09 |

| 8  | December 2010 | $54,945.62 |
|----|---------------|------------|
| 9  | March 2011    | $29,190.54 |
| 10 | June 2011     | $20,446.81 |

All in violation of Title 26, United States Code, Sections 7202 and 2.

A TRUE BILL

_____       _____
UNITED STATES ATTORNEY                FOREPERSON